UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA J. M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C23-5384 RSM

**ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits (DIB). Plaintiff contends the ALJ erred at step five and by rejecting his symptom testimony. Dkt. 8.[1] As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 41 years old, has at least a high school education, and has worked as a medical service technician, combat rifle crew member, management trainee, and manager, retail store. Admin. Record (AR) 39. In August 2020, Plaintiff applied for benefits, alleging disability as of

---

[1] Plaintiff's Opening Brief does not entirely comply with the briefing requirements provided in the Court's Scheduling Order, as Plaintiff did not list the alleged errors on the first page of the brief. *See* Dkts. 7 at 2; 8 at 1. In the future, counsel shall take care to review and comply with the Court's briefing requirements.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 1

August 31, 2014.  AR 83, 94.  Plaintiff's application was denied initially and on reconsideration.  AR 90, 118.  The ALJ conducted a hearing in December 2021 (AR 46–81) and issued a decision in March 2022 finding Plaintiff not disabled from his alleged onset date of August 31, 2014, through his date last insured of December 31, 2019.  AR 22–45.

## DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational.  *Ford*, 950 F.3d at 1154.  Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 1.    Step Five

Plaintiff contends the ALJ erred at step five by failing to reconcile the inconsistency between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT), and by relying on the VE's testimony.  Dkt. 8 at 4–8.

At step five of the sequential evaluation process, the ALJ has the burden of determining whether "the claimant can perform a significant number of other jobs in the national economy."  *See Ford*, 950 F.3d at 1149.  If the claimant is not able to do so, the ALJ must find the claimant disabled.  *Id.*  The ALJ can meet the burden of showing that there is other work in "significant numbers" in the national economy by utilizing the testimony of a vocational expert (VE).  *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  An ALJ may not "rely on a vocational expert's testimony regarding the

requirements of a particular job without first inquiring whether or not the testimony conflicts with the Dictionary of Occupational Titles [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1153–54). "The ALJ must ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Id*.

During the hearing, the ALJ asked the VE what jobs are available to an individual like Plaintiff who, in relevant part, is limited to light or sedentary work with occasional overhead reaching with the right dominant arm and occasional superficial interaction with the public and coworkers. AR 73, 75–77. The VE provided the ALJ six jobs: (1) marker (DOT 209.587-034), (2) assembler, small products II (DOT 739.687-030), (3) mail sorter (DOT 209.687-026), (4) document preparer (DOT 249.587-018), (5) escort vehicle driver (DOT 919.663-022), and (6) surveillance system monitor (DOT 379.367-010). AR 77–78. The ALJ then asked the VE if any of his testimony was "inconsistent with the DOT." AR 79. The VE replied his testimony was not. *Id*. The ALJ then asked the following: "Now, I gave you limitations that asked you to differentiate between . . . types of reaching, about the workplace environment, contact with others . . . . Assuming that those things are not directly addressed by the DOT, what did you rely on for your testimony?" *Id*. The VE replied that he relied on his professional experience. *Id*.

At step five, the ALJ adopted the jobs the VE provided. AR 39–40. The ALJ explained:

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 3

>Although the vocational expert's testimony is inconsistent with the information contained in the Dictional of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert testified regarding limitations regarding overhead reaching . . . none of which are contemplated in the Dictionary of Occupational Titles. For that testimony, the vocational expert relied on his education, experience, and expertise . . . and the undersigned finds his testimony persuasive.

AR 40.

Plaintiff disputes the ALJ's statement that the DOT does not contemplate overhead reaching, and instead argues that the inconsistency needing resolution is between five of the six jobs the VE provided, which require overhead reaching *frequently* or *constantly*, and the *occasional* reaching limitation the ALJ included in his hypotheticals and in the RFC assessment. Dkt. 8 at 6–7; AR 31, 73, 75. Therefore, Plaintiff argues, the ALJ should have further inquired the VE regarding this discrepancy. Dkt. 8 at 7.

The Court notes the ALJ did ask the VE if there were any inconsistencies between his testimony and the DOT, so in that regard the ALJ satisfied part of his duty. *See* AR 79. However, by failing to acquire a "reasonable explanation for the apparent conflict" between the reaching frequency in the ALJ's assessment and the jobs the VE provided and the ALJ adopted in his decision, the ALJ erred. *See Zavalin*, 778 F.3d at 846. An explanation is necessary in this case because "[s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations." Social Security Ruling (SSR) 85-15. "Reasonable explanations" include, but are not limited to, (1) a VE knowing information about a particular job's requirements not listed in the DOT because the VE obtained the information from employers, or from the VE's experience in

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 4

job placement or career counseling, and (2) a VE having more specific information regarding the "range of requirements of a particular job as it is performed in specific settings." *See* SSR 00-4P.  Here, when the ALJ asked the VE about what he based his testimony on, assuming there were limitations that were not addressed by the DOT, the VE replied his "professional experience." AR 79.  The ALJ in turn relied on the VE's testimony in his decision based on this alone, rather than on any "reasonable explanations" for why the VE thought Plaintiff could perform jobs that required *frequent* or *constant* overhead reaching when the ALJ asked about jobs that required *occasional* overhead reaching.  Had the ALJ inquired further, the ALJ may have acquired information available to the VE that explains why Plaintiff would be able to perform the higher range of requirements for those five jobs.  But because the ALJ did not, the Court "cannot determine whether the ALJ properly relied on the VE testimony." *Massachi*, 486 F.3d at 1154.

      Plaintiff also argues that even though the sixth job the VE provided, surveillance system monitor, has the same reaching requirements as the ALJ's RFC assessment, the ALJ still failed to meet his step five burden because this particular occupation requires frequent talking and does not provide a "significant" number of available jobs in the national economy.  Dkt. 8 at 7–8.  The Court agrees.  The ALJ assessed Plaintiff would be limited to "occasional interaction with coworkers but occasional, superficial interaction with the public." AR 30–31.  But an individual performing the surveillance system monitor occupation would have to talk frequently, as defined by DOT 379.367-010.  The ALJ did not explain this discrepancy.  Moreover, the VE testified that this occupation includes 2,500 jobs nationally.  AR 78.  Although the Ninth Circuit has

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 5

declined to create a bright-line rule regarding how many jobs is considered a "significant number," it has found that 25,000 jobs nationally present a "close call." *See Gutierrez v. Comm'r of Social Sec.*, 740 F.3d 519, 519 (9th Cir. 2014). The number identified by the VE and incorporated by the ALJ in his decision is far below this figure, therefore the Court finds the ALJ failed to meet his burden at five.

### 2. Plaintiff's Symptom Testimony

Plaintiff testified he experiences flashbacks from his time in the military, does not get a lot of sleep, has panic attacks, and suffers from depression and anxiety. AR 57, 63–64. He explained he does not engage with his community and does not work well with others because he is easily triggered. AR 58, 64–65. He explained he spends most of his time at home, but when he has to go somewhere, such as the grocery store, he needs to be accompanied by his wife. AR 58–59, 65. He explained his body can go into a "fight-or-flight mode" any time because of his post-traumatic stress disorder (PTSD). AR 60.

Plaintiff also testified that he has spinal issues that require him to constantly shift in his position and limit him to 15 to 20 minutes of sitting and 10 to 15 minutes of standing. AR 66–68. He explained he has to lay down for 20 to 30 minutes every hour, or 2.5 to four hours per eight-hour period. AR 68–69.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that

it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ rejected Plaintiff's physical symptom testimony because it was inconsistent with objective medical evidence. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498. Treatment notes the ALJ cited to show there were occasions where Plaintiff had limited mobility, especially in late 2014 and early 2015. *See, e.g.*, AR 364–65, 370–71, 374–75, 379–80, 392, 628, 678, 727. However, subsequent treatment notes show Plaintiff generally had full range of motion and full strength with normal gait, or Plaintiff reported no back pain. *See* AR 326 ("Denies pain today") 327 ("Mobility was not limited."), 331 ("Denies pain today," "No back pain," "Mobility was not limited."), 345 (limited lumbar mobility but lower extremity weakness and normal upper extremity strength), 351 ("Full range of motion of the cervical spine without pain observed."), 352 (full strength in upper extremity), 356 ("Mobility was not limited."), 380–81 (same), 402 (same), 424 (decreased range of motion but full strength in lumbar spine/lower back), 509 (full strength in lumbar spine/lower back), 518–19 (same), 525–26 (no back pain, normal range of motion and strength), 537 ("No back pain, neck pain, joint pain, muscle pain, decreased range of motion"), 551 (no back swelling or tenderness), 556 ("Skeletal ROS Negative"), 559 ("Normal range of motion and strength, no tenderness or swelling"), 567 (reporting no pain), 573 (muscle strength and range of motion of extremities normal), 582–83, 602 (no back pain, mobility not limited), 607 (same), 635–36 (full range of motion of spine without pain observed, full motor strength in upper extremities), 783 (muscle strength and range of motion of extremities normal), 790 (no back pain), 795 ("No back pain,

neck pain, joint pain, muscle pain, decreased range of motion"), 797 ("Sensation and strength exams [of back] are equal and symmetrical bilaterally without deficit."), 907 (no back pain), 1124 (full strength of lumbar spine), 1138 (muscle strength and range of motion of extremities normal), 1154 (normal range of motion and full strength) , 1285 (no back pain), 1579–80 (no back pain and mobility note limited).  Treatment notes from 2018 show Plaintiff's reports of sciatica nerve pain, but they also show he was "pain free" until he started working out again, and his examination showed normal range of motion.  AR 559, 800–01, 806–07.  Treatment notes during the relevant period and after Plaintiff's date last insured show he reported tightness and flare up with his lower back, but they also show he responded well to medication and physical therapy.  *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988)); 20 C.F.R. § 416.1529(c)(3) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); AR 736, 811, 894.

      As for Plaintiff's shoulder, the ALJ explained Plaintiff's record contained no diagnostic images at all.  AR 35.  Plaintiff disputes this explanation and points to records indicating his condition is "is consistent with bicipital tendinitis" and treatment notes from his steroid injections.  Dkt. 8 at 15 (citing AR 465, 496–97).  Plaintiff is correct in saying that a lack of imaging that fully corroborates a claimant's allegation of plain cannot be used to reject that claimant's testimony.  *See Burch*, 400 F.3d at 680.  And while the ALJ did point to other treatment records showing Plaintiff did not report shoulder pain until he had started working out again and physical examinations showing

full range of motion with this shoulder, AR 35 (citing AR 533–34), later records also show rest and steroid injections resulted in "minimal to no relief." AR 1867. Overall, the objective medical evidence the ALJ cited substantially supports only the finding that Plaintiff's back and spinal symptoms were not as severe as alleged.

      In rejecting Plaintiff's mental symptom testimony, the ALJ similarly pointed to objective medical evidence. AR 35. Plaintiff's mental status examinations often showed he was cooperative with euthymic mood and normal effect, and Plaintiff reported no depression or stress problems on several occasions. AR 208–09, 313–14, 327, 331, 344 ("No depression), 382, 392, 396, 424, 518, 526, 534, 537, 541, 556 ("Psych/Social ROS Negative," mood and affect congruent), 559, 567–68 ("PTSD: no", "Not tired. Normal mood & [a]ffect"), 574 ("No evidence of depression, anxiety, confusion, or agitation."), 583, 602, 607, 690, 701, 783 ("No evidence of depression, anxiety, confusion, or agitation."), 790, 793, 797, 801, 806, 808, 919 (depression score "0"), 1128, 1138, 1154, 1579–80, 1584, 1869. In February 2015, Plaintiff reported a "resurgence of his PTSD symptoms" affected his ability to go back to school and leave the house. AR 376–77. But in a March 2015 evaluation, an examining psychologist assessed Plaintiff's PTSD symptoms were not severe enough to require continuous medication. AR 651, 656. The psychologist further noted that while there would be "occasional decrease" in his work efficiency, Plaintiff had "generally satisfactory functioning." AR 656. Plaintiff also reported improvement with his concentration due to medication. AR 554, 735–36, 798. Plaintiff points out several treatment notes showing he continued to experience sleep disturbances. Dkt. 8 at 12. However, most of the records cited show Plaintiff continuously presented alert and awake. Further, the ALJ reasonably discounted this part

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 9

of his testimony by citing to later records showing Plaintiff continued to sleep better for seven hours with no frequent awakenings after changing his diet, staying active, and taking medication. *See* AR 561, 567. *See* 20 C.F.R. § 404.1529(c)(3) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms). Overall, Plaintiff's continuously normal mental status findings, reports of no depression or anxiety, treatment notes showing improvement, and psychological evaluation describing the extent of Plaintiff's PTSD support the ALJ's finding that Plaintiff's mental health symptoms were not as severe as alleged.

In rejecting both Plaintiff's physical and mental symptom testimony, the ALJ also cited Plaintiff's activities, including his ability to exercise, attend school, drive, perform household chores, and travel. AR 33–36. An ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Plaintiff points out his exercise regimen were only "stints" in the gym that lasted for one to three weeks or "two to three times a year" only, and that he is now unable to lift weights or go to the gym at all Dkt. 8 at 11; AR 66–67. But the records nonetheless show Plaintiff continued to participate in exercises and fast walking and remained active on several occasions throughout the relevant period, even when he had limited mobility, as well as after his date last insured. *See* AR 356 ("Patient does moderate exercise for 30 minutes most days of the week."), 358 (same), 362 (same), 364 (reporting back pain but also exercising moderately "for 30 minutes most days of the week"), 379–80 (reporting back and shoulder pain but also continuing to lift weights and do cardio on an inclined treadmill), 533, 559, 742, 800, 1288, 1574–75, 1612, 1826–27. Further, "[e]ven if the claimant experiences some difficulty or pain, [his] daily activities 'may be grounds for discrediting the

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS - 10

claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *See Smartt*, 53 F.4th at 499. Plaintiff's ability to remain physically active, even with reports of pain, undermines his testimony about the severity of his back, spine, and shoulder limitations.

As for Plaintiff's ability to attend school, the record shows Plaintiff received accommodations for both his physical and mental symptoms, which reflects, rather than contradicts, Plaintiff's testimony during the hearing. *See* AR 61–62, 731. Regarding Plaintiff's ability to travel, the record shows Plaintiff moved back to Washington and flew on a plane to attend a funeral. AR 1832–35. But it is not clear, and the ALJ does not explain, what activities Plaintiff engaged in during his move that would support the ALJ's rejection of Plaintiff's testimony. Further, Plaintiff explained he only drives when he needs to with his wife and typically takes the back roads to avoid any possible triggers. *See* AR 58. Plaintiff also explained that he took medication for both his back and his anxiety when he flew. *See* AR 72.

In sum, because the ALJ provided at least one valid reason, supported by substantial evidence to reject Plaintiff's testimony, the ALJ did not err. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence). The ALJ's rejection of Plaintiff's mental symptom testimony and specifically Plaintiff's testimony regarding his back and spine is supported by substantial evidence, given the several mental and physical examinations showing largely normal findings. Additionally, considering Plaintiff was able to maintain an exercise regimen throughout the relevant period, the ALJ reasonably rejected Plaintiff's physical symptom

testimony, including his testimony regarding his shoulder.  The ALJ's assessment of the record is a rationale one.

### 3. Scope of Remedy

Plaintiff argues that if his testimony were properly credited, the ALJ would have to find him disabled on remand.  Dkt. 8 at 16–17.  But remanding for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045.  First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).  Only if the first two steps are satisfied can the Court determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  "Even if [the Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).  Here, the Court has found the ALJ's evaluation of Plaintiff's testimony reasonable.  However, the Court also found the ALJ erred at step five by failing to resolve the conflict between the VE's testimony and the DOT.  This presents an "outstanding issue[] that must be resolved before a determination of disability can be made." *Treichler*, 773 F.3d at 1101.  Accordingly, the Court finds remanding

the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider his step five findings and obtain VE testimony if necessary.

DATED this 3rd day of January, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE